(August 12, 2008)

■ Jason Ford, an Infant, by His Mother and Natural Guardian, Sabine Kerinsant, et al., Respondents, v City of New York et al., Appellants. (And a Third-Party Action.) [863 NYS2d 180]—

Order, Supreme Court, Bronx County (Paul A. Victor, J.), entered March 20, 2007, which denied as untimely the motion by defendants Centennial and School Construction Authority (SCA) and the cross motions by the remaining defendants for summary judgment dismissing the complaint, unanimously affirmed, without costs. Order, same court and justice, entered on

or about December 19, 2007, which, upon reconsideration, adhered to the prior decision, unanimously affirmed, without costs.

On October 15, 2002, the then-16-year-old infant plaintiff was a student at Harry S. Truman High School in the Bronx. While roughhousing with 17-year-old student Mainor Lopez in an alcove near the cafeteria adjacent to the custodian's elevator, on the third floor of the school, he fell or was thrown into the elevator doors, causing them to bend, and the bottom of the doors to give way into the shaft. Plaintiff fell down the shaft and sustained serious injuries.

This action was commenced in March 2003. All defendants have denied the essential allegations in the complaint and asserted affirmative defenses and cross claims.

A preliminary conference was held in August 2003, at which time all outstanding discovery was scheduled for completion. Plaintiff's deposition was not completed as scheduled because of his medical condition, but his counsel requested permission to file a note of issue anyway and all defendants agreed. On November 5, 2004, the note of issue and statement of readiness were filed, incorrectly stating that all discovery had been completed. Outstanding discovery included, inter alia, the deposition of Douglas Smith, Chief Inspector for the Elevator Division of the New York City Department of Buildings, and James Duffy, an employee of defendant Richmond Elevator Co.

At a pretrial conference in October 2005, the IAS court directed the parties to complete some unspecified discovery prior to the next conference, scheduled for January 20, 2006. On that date, the parties appeared and entered into a stipulation to complete all outstanding discovery, and the matter was scheduled for a final conference on May 19, 2006.

This "final conference" resulted in a stipulation signed by counsel for all parties and "so-ordered" by the court, providing that depositions were to be completed on various dates, the latest being July 25, 2006. Any independent medical examinations were to be conducted before July 28, 2006. The stipulation provided that defendants' time to move for summary judgment "is extended to 60 days after completion of EBTs." The court added the following language: "Failure to comply with the foregoing may warrant imposition of sanctions, including waiver of discovery. No EBT may be adjourned without Court approval." Another "final conference" was scheduled for October 27, 2006. At that conference, the matter was set down for trial on March 12, 2007, with the court records noting that "all parties request this date." There is no indication in the record that any discus-

sion regarding outstanding discovery took place at this conference.

Duffy's EBT was timely commenced on June 15, 2006. When plaintiff's counsel was unable to complete the deposition in one day, the parties agreed to continue it on a future date. It was ultimately completed on December 18, 2006, approximately two months after the trial date was set. No approval by the court for the enlargement of time to complete Duffy's deposition was sought.

SCA and Centennial moved for summary judgment dismissing the complaint on February 1, 2007; they claimed their motion was timely, having been made within the 60-day window of the so-ordered stipulation. Richmond, the City and the Board of Education also sought summary judgment dismissing the complaint. Plaintiffs did not oppose the motions or cross motions. However, none of the defendants argued that this was an inexcusable default. Rather, on March 12, 2007, defendants agreed to adjourn the motions to permit plaintiffs to submit opposition. The court rejected the application to adjourn, deemed the motions submitted and entered an order on March 20, 2007, denying all motions on the ground that they were untimely. Citing the so-ordered stipulation requiring all EBTs to be conducted on specific dates, the last being July 25, 2006, with no adjournments without prior court approval, the court noted that no such approval was sought or given. Since all motions were submitted more than 60 days beyond the date set for completion of discovery, the motions were untimely. The court did not consider the merits of the motions.

All defendants moved to reargue. SCA, Centennial and Richmond argued they had good reason to assume the original motions were timely as the motions were made within 60 days of the completion of Duffy's deposition, and the completion of Duffy's deposition was not an "adjournment" that required court approval but merely a continuation to accommodate plaintiffs' counsel. The City and Board of Education acknowledged that their motions were not made within 60 days of the completion of Duffy's deposition but asserted that they were timely because the deposition of *another* defendant remained outstanding. All defendants also argued that the court should have considered the merits of their motions.

This time, plaintiffs opposed the applications on the merits, but did not argue the original motions were untimely. The court rejected defendants' motions for "reargument and renewal," citing the procedural history of the case in detail and stating that "None of the parties have given any credible reason why

Duffy's deposition was not concluded by June 15, 2006, and why it did not occur until six months later."

CPLR 3212 (a) provides that a court may set the time within which a party may move for summary judgment. Here, the court did just that. Contrary to defendants' claims, the so-ordered stipulation explicitly provided that defendants had 60 days after completion of the EBTs to move for summary judgment, and that no EBTs could be adjourned without court approval. The argument that Duffy's EBT was not "adjourned" but merely "continued" does not survive close scrutiny. In fact, the parties' behavior was not consistent with an innocent misunderstanding that they had the right to adjourn the deposition for a prolonged period of time. On the contrary, all counsel, plaintiffs' included, knew at the October 27, 2006 final pretrial conference that Duffy's EBT had not been completed, and that a date to complete it had not even been set. Yet counsel went ahead on that date and not only agreed to, but *requested*, a trial date of March 12, 2007. If defendants' attorneys honestly believed they had the right to submit a motion for summary judgment due to the unfinished Duffy deposition, they should have informed the judge, during the conference, that a trial date should not be set because of the incomplete deposition and potential motion practice. Instead, as a further demonstration of their complete disregard for the so-ordered stipulation, they filed the initial summary judgment motions on February 1, 2007, more than three months after the final pretrial conference. They offered no explanation for waiting until 40 days prior to the trial date to move for summary judgment. Defense counsels' complete disregard of the court's mandate culminated on March 12, 2007, the actual trial date they had selected approximately five months earlier, when they agreed to adjourn the summary judgment motions to permit plaintiffs' counsel to respond.

It is commendable that all counsel here showed each other professional courtesy. The court deserves the same consideration. The IAS court demonstrated a remarkable willingness to permit counsel to complete discovery on their own terms. However, orders, including so-ordered stipulations, "are not options, they are requirements, to be taken seriously by the parties. Too many pages of the Reports, and hours of the courts, are taken up with deadlines that are simply ignored" (*Miceli v State Farm Mut. Auto. Ins. Co.*, 3 NY3d 725, 726-727 [2004]). "If the credibility of court orders and the integrity of our judicial system are to be maintained, a litigant cannot ignore court orders with impunity" (*Kihl v Pfeffer*, 94 NY2d 118, 123 [1999]).

Counsel argue that they acted in good faith believing that

they were within the 60-day window to move for summary judgment, and claim that the so-ordered stipulation provided them 60 days from the time EBTs were complete to so move. They also contend that if the court looks at the merits of their argument, summary judgment would be appropriate, even if tardy. This attempt to fall within the "good cause" provision of CPLR 3212 (a) is unavailing. The "good cause" exception requires the moving party to show "a satisfactory explanation for the untimeliness—rather than simply permitting meritorious, nonprejudicial filings, however tardy" (*Brill v City of New York*, 2 NY3d 648, 652 [2004]). In *Brill*, the Court of Appeals specifically refused to consider the merits of an untimely motion for summary judgment. Indeed, four months after that decision, the Court reiterated that "if the merit of the motion itself constituted good cause, the statutory deadline would be circumvented and the practice of delaying such motions until the eve of trial encouraged" (*Miceli*, 3 NY3d at 726).

We simply cannot accept defendants' claims concerning alleged ambiguities in the so-ordered stipulation, particularly in light of the fact that, according to the City's papers, the deposition of a defendant still had not taken place as of the time of the motions. To accept this argument would mean that counsel, not the court, can set the schedule and pace of discovery, and that the end of discovery would be a fluid, moving goal, not a fixed point in time. The court system simply cannot be run in this fashion.

Nor does our decision in *Vila v Cablevision of NYC* (28 AD3d 248 [2006]) require a different result. There, the so-ordered stipulation required dispositive motions to be made within "90 days from completion of outstanding depositions—9/29/03." (*Id.*) The last deposition was actually held approximately three months later. The IAS court found the motions for summary judgment to be untimely. We reversed, finding that language to be ambiguous, and as such, constituted the requisite "good cause" to permit filing of the motions. Here, the court specifically inserted language requiring court approval for adjournments of the scheduled dates of the EBTs, something absent from the order in *Vila*. As a result, the order here was neither vague nor ambiguous, and counsel's claims of "good cause" for the untimely submission of the motions are without merit. Concur—Lippman, P.J., Andrias, Sweeny and Renwick, JJ.